**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Case Number: 22-CR-00180 (RC)** |
| | : | |
| | : | |
| **GLENN MATTHEWS,** | : | |
| Defendant. | : | |

**UNITED STATES' SENTENCING MEMORANDUM**

The United States, by and through undersigned counsel, respectfully files this memorandum to aid the Court in its sentencing proceeding.

For the reasons detailed below, the United States respectfully submits that a Guidelines sentence of 360 months is sufficient but not greater than necessary to effectuate the statutory sentencing factors under 18 U.S.C § 3553(a). The United States also respectfully requests that the Court impose a 15-year term of supervised release and order the forfeiture of the electronic device used in connection with the offense.

### I.   Background

For over four months in 2020, Defendant Glenn Matthews preyed on minors using his Instagram account "southsidearea." He sent at least ten different minors images of his penis and/or videos of himself masturbating. One of those victims was only nine years old. Another two of his victims were 11 years old. The defendant relentlessly and indiscriminately sought out his victims on Instagram, persuading, enticing and coercing them to create sexually explicit images of themselves and to send him these images for his own sexual gratification. He was demanding with some of his victims, unleashing angry threats to frighten and humiliate these children when they did not comply. For instance, in August 2020, the defendant reached out to a nine-year-old child,

1

MV-8.  He initiated a video call with her and, in the text messaging that followed, lied about his

age:

> MV-8: How old are y
> D[efendant]: 22 how old you idc bout your age tho
> MV-8: I'm nine and ugly
> D: You cute to me sexy I like you
> MV-8: Thx
> D: I want you wish I could have you
> D: You really 9
> MV-8: Yea
> D: Damn you should be mine that be fun baby
> D: You know what you can call me
> MV-8: Give me your number
> D: If you want to call me call me on here
> MV-8: Nvm
> D: Are you going be mine baby
> MV-8: Idk
> MV-8: You to old fro me
> D: Idc no one got to know ok
> MV-8: My sitter heard u
> MV-8: Sister
> D: Ok where she at
> MV-8: I'm the room with me
> D: Ok so you don't want to be my lil girl baby
> MV-8: Sure
> D: You going call me daddy
> MV-8: Idk
> D: Call me daddy now
> MV-8: Dad
> D: You going like that ok
> MV-8: lol
> D: You have to be mine and always do what daddy say ok
> D: Ok
> MV-8: *[heart emoji]*
> MV-8: ok
> D: You was here you know what I make you do
> MV-8: huh
> D: You know what I make you do
> MV-8: I don't like that
> MV-8: I'm sorry
> MV-8: We can be friends
> MV-8: But I don't want to date a 22 year old
> D: You not dating me you going just text me and do what the fuck I say ok.
> MV-8: no

> MV-8: I'm block you and reporting you
> D: No don't
> D: Sorry
> MV-8: Yes
> MV-8: YOU CAN GO TO JAIL FOR THAT

The defendant then sent MV-8 a screenshot of one of their chats, and asked if he could post it to Instagram.  In response, MV-8 threatened to block him. The defendant sent two pictures of his penis and continued to demonstrate his sexual interest in his nine-year-old victim:

> D: is my dick small
> MV-8: Yea
> D: You think you can handle my dick
> MV-8: No
> D: You know how to twerk
> MV-8: Yes
> D: Can you make video you twerking
> MV-8: No
> D: Why
> MV-8: BECAUSE!!!!!

MV-8 was subsequently identified and forensically interviewed.  MV-8 disclosed that the defendant had asked her multiple times for pictures of her vagina during the initial video call.

The day before the defendant preyed on nine-year-old MV-8, the defendant initiated a conversation with a 14-year-old child, MV-9.  He initiated multiple video calls with MV-9 and sent her a picture of his penis and multiple videos of himself masturbating.  He told her, "I want you to beat my dick for me", "you look sexy", and "I finger your pussy I bet it will feel good."  As with MV-8, the defendant threatened to post a screenshot of their conversation if she did not text him every time he texted her:

> D: Can I post this
> MV-9: No
> D: You not going get in trouble are you
> MV-9: I am
> D: Ok I'm not going post it
> D: But you now going text me every time I text you
> MV-9: no

D: Ok I'm going to post it
MV-9: And I'm gonna block you
D: Ok and I'm send this to all your friends and I'm post it

In another conversation, in October 2020, the defendant reached out to a 12-year-old, who told him exactly how old she was and called herself "a little kid." The defendant told this minor victim, "I want you to be my lil freaky girl." He then began sending sexually explicit messages to this child, writing, "if I was at your house in your room will you let me finger your pussy". When the child asked, "so do you like young girls," the defendant replied, "Yea I do." He asked her to be his girlfriend, warning her that "you can't tell no one bout me." He also asked the victim for pictures and when the child ignored his requests, he took screenshots of their conversation and asked to post them.

The defendant was finally caught when the mother of an 11-year-old girl, MV-1, saw messages that the defendant sent to her child via Instagram. In November 2020, the defendant wrote to MV-1: "I'm bout beat myself dick I want you to see", "You going look", and "When I beat my dick I want see your face ok". The defendant then initiated a video chat on Instagram, where he could be seen masturbating. The defendant did not know that MV-1's mother was on the other side of the screen and that she immediately reported the defendant's criminal conduct to law enforcement.

As detailed below, the subsequent investigation revealed that this one incident was just a small part of this offender's ongoing criminal sexual abuse and exploitation of young, vulnerable children. *See generally* Presentence Investigation Report (PSR), Dkt. 63, ¶¶ 17-36. For instance, on July 27, 2020, the defendant initiated a conversation with MV-5, a 15-year-old from Kansas. The defendant volunteered that he was 31 years old and that he did not care about MV-5's age. He told MV-5 that when she visited DC the following summer, he was "going to want to taste

[her] pussy." The defendant exchanged messages with MV-5 throughout September and October, including sending an image of his penis. He continued to discuss meeting up with MV-5 and repeatedly asked for sexually explicit images of MV-5. When MV-5 finally relented and sent a video of a female masturbating, the defendant wanted proof that the video was of her. He demanded, "Make a video now" or that, at the very least, she "[s]end some more old shit."

On July 29, 2020, the defendant initiated contact with another 15-year-old, MV-10, a boy from Alabama. The defendant disclosed that he was bisexual and told MV-10 that he liked being with boys. The defendant then sent MV-10 images of his penis and a video depicting himself masturbating. The defendant also induced and persuaded the minor victim to send a picture of his penis in order to evaluate its size ("I can tell you if it's big"). MV-10 complied, and the defendant then demanded that MV-10 "make a video" of him masturbating. MV-10 did not make a video and, instead, blocked the defendant. When MV-10 unblocked him, the defendant threatened him with their prior conversations: "You going do what the fuck I say you mine. If you don't I will send it to your family and friends screenshots."

In August 2020, the defendant told 13-year-old MV-13, "Damn you sexy I want you to suck my dick." After learning her age, he told her, "I want see you stick something in your pussy." By the time law enforcement obtained data from the Instagram conversations (pursuant to a search warrant), the images were no longer available. But, based on the content of the messages, it appears that MV-13 complied. She sent ten images, to which the defendant replied, "O yea that was sexy I woke this morning to see that pussy look good."

The following month, the defendant initiated yet another conversation with a minor. This time, 15-year-old MV-2 lived in the DC region. The defendant began by sending pictures of his penis to the minor victim, asking "if I showed you my dick will you touch it?" and "if I was there

with you will you let me eat your pussy." He asked MV-2 whether she was a virgin and asked

again, "will you really let me eat your pussy?" Over the course of two weeks, the defendant

mentioned meeting up multiple times, suggesting specific locations so that he could "fuck that

pussy". The defendant reached out repeatedly—on September 3, 7, 8, 11, 12, and 13. On

September 14, he wrote:

> D: When you let me eat that pussy
> MV-2: .idk
> D: if I want see you one day will you
> MV-2: .ok
> D: Will you meet me
> MV-2: *[audioclip-1600097852000-975.mp4 (778624909657615)]*
> D: O ite so look trying meet me Wednesday
> MV-2: .ill try
> D: O ite what part dc you from
> MV-2: *[audioclip-1600100681000-3854.mp4 (597783657568689)]*
> D: Cause the fuck I ask
> MV-2: [*audioclip-1600101395000-1764.mp4 (822368161842620)]*
> D: I ask to see if you say close to me in dc area that's it
> MV-2: *[sent an attachment]*
> D: O ite and you sexy to
> MV-2: . thanks
> D: You going let me fuck right

Five minutes later, the defendant asked, "what whatssup what you want do after I fuck you." The

defendant—persistent in his quest to meet with MV-2 for sex—followed up the next day, on

September 15:

> D: You meeting me tomorrow
> MV-2: *[audioclip-1600182006000-4527.mp4 (1028542230940100)]*
> D: On the southside goodhope
> MV-2: *[audioclip-1600182100000-5433.mp4 (370890563914070)]*
> D: where you want meet me at
> MV-2: . omg
> D: You know where Marlboro plaza at
> MV-2: *[audioclip-1600182528000-1369.mp4 (361036851731549)]*
> D: Well that's where we going you got go to Anacostia station
> MV-2: *[audioclip-1600182818000-1695.mp4 (649005005802795)]*
> D: For I can fuck that pussy

> MV-2: *[audioclip-1600183257000-4899.mp4 (312669019832247); audioclip 1600183258000-1648.mp4 (635262503860344)]*
> D: Naw cause that building is big as shit no lie I'm trying take you onthe 11 floor and bust you on the Staircase
> MV-2: *[audioclip-1600183488000-3204.mp4 (433351767684230); audioclip-1600183498000-4086.mp4 (336545177398747)]*
> D: Lol that's only place must I remind you you 15 I'm 31 I can take you to my house only place.

Additionally, while he sought to entice MV-2 to engage in sexual activity, the defendant sent her multiple images of his penis and multiple videos depicting him masturbating.

The defendant's conduct was not just "limited" to enticement over the internet. As demonstrated above, he tried to meet up with minors for sex in person. And he repeatedly sought to induce, persuade, and coerce minor victims to create sexually explicit images and send them to him for his own sexual gratification.

Perhaps even more disturbingly, when this defendant was entrusted with the care of a very young child, he used that opportunity to sexually abuse her. Multiple times, he touched the vagina and buttocks of a four to six-year-old child (MV-15) with whom he had a significant, caretaking relationship. He touched her vagina multiple times under her clothing, and he told her to remove her clothing. When MV-15 told the defendant to stop touching her, he refused. And when the minor victim was asleep, the defendant further victimized this defenseless child, photographing her buttocks surreptitiously. He then pulled up her underwear—touching her buttocks to do so— and he took pictures of her exposed buttocks with his phone for his own sexual gratification.

On April 12, 2023, the defendant pled guilty to Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b) (Count One), and Second Degree Child Sexual Abuse (Aggravating Circumstances), in violation of D.C. Code §§ 22-3009, 22-3020(a)(1), (a)(2) (Count Two). *See* Dkt. 51 (Plea Agreement), Dkt. 52 (Statement of Offense). This matter is set for Sentencing on November 6, 2023.

## II.    <u>Statutory Minimum and Maximum Penalties</u>

Coercion and Enticement of a Minor (Count I) carries a minimum sentence of 10 years' imprisonment and a maximum term of life imprisonment.  *See* 18 U.S.C. § 2422(b).  Following any term of imprisonment, the defendant must be placed on supervised release for a term of at least 5 years to life.  18 U.S.C. § 3583(k).  Count I carries a fine of not more than $250,000 or twice the pecuniary gain or loss pursuant to 18 USC § 3571(b)(3); a mandatory order of restitution pursuant to 18 USC § 3663A; an obligation to pay any applicable interest or penalties on fines or restitution not timely made; a $100 special assessment; a $5,000 assessment pursuant to 18 USC § 3014(a); and, pursuant to 18 USC § 2429, mandatory restitution in an amount equal to the full amount of the victim's losses as determined by the Court.

Second Degree Child Sexual Abuse - Aggravating Circumstances (Count Two) carries a maximum sentence of 15 years' imprisonment. Following any term of imprisonment, the defendant must be placed on supervised release for a term of at least 3 years but not more than 10 years pursuant to 24 DCC §§ 403.01(b)(2)(B) and (4)(A). Count II carries a maximum fine of $37,500, and the defendant is also required to pay an assessment of between $100 to $5,000 to the DC Crime Victims Assessment Fund, 4 DCC § 516(a).

## III.    <u>Guidelines Calculations</u>

As the Court is aware, although the Sentencing Guidelines are advisory, sentencing courts "must consult those Guidelines and take them into account when sentencing."  *United States v. Booker*, 543 U.S. 220, 264 (2005).  Thus, at sentencing, a court "must first calculate the Guidelines range" applicable to the defendant.  *Nelson v. United States*, 555 U.S. 350, 351 (2009); s*ee also Gall v. United States*, 552 U.S. 38, 49-50 (2007).

It is the government's position that the PSR has correctly calculated the total offense level

for the defendant as follows:

| Guideline [Count IA (MV-2), 1B (MV-5), 1C (MV-10), 1D (MV-13)] | |
|---|---|
| The guideline for a violation of 18 USC § 2422(b) is U.S.S.G. §2G1.3. Pursuant to the cross reference at U.S.S.G. §2G1.3(c)(1), §2G2.1 is used to determine the offense level because it results in a higher offense level.   (U.S.S.G. §§2G2.1(a) and 2G1.3(c)(1)). | 32 |
| The offense involved a minor between the ages of twelve and sixteen [MV-2 was age 15; MV-5 was age 15; MV-10 was age 15; MV-13 was age 13].  (U.S.S.G. § 2G2.1(b)(1)(B)) | +2 |
| The offense involved the use of a computer or an interactive computer service [iPhone and Instagram] to solicit participation by a minor to engage in sexually explicit conduct. (U.S.S.G. § 2G2.1(b)(6)(B)) | +2 |
| **Adjustment Offense Level (Subtotal)** | **36** |
| Multiple Count Adjustment.  (U.S.S.G. § 3D1.4) | +4 |
| Repeat And Dangerous Sex Offender Against Minors.  (U.S.S.G. §4B1.5) | +5 |
| Acceptance of Responsibility. (U.S.S.G. § 3E1.1(a)) | -2 |
| Acceptance of Responsibility. (U.S.S.G. § 3E1.1(b)) | -1 |
| **Total Offense Level** | **42** |

*See* PSR ¶¶ 41-78.

The defendant's Criminal History Category is IV.  Based on a total offense level of 42 and

Criminal History Category of IV, the defendant's Guidelines sentencing range on Count I is 360

months to life imprisonment.  *See* PSR ¶ 148.

For Count II, Second Degree Child Sexual Abuse (Aggravating Circumstances) is

classified as a Group M6 offense under the DC Guidelines. *See* PSR ¶ 80. The defendant has a

Criminal History Category C.  The guideline range for a Group 6 offense and Criminal History

Category C is 30 to 108 months' imprisonment.  *See* PSR ¶ 150.

## IV.   <u>Section 3553(a) Factors</u>

After calculating the Guidelines range, a sentencing court must then consider that range,

as well as the sentencing factors set forth in 18 U.S.C. § 3553(a), to determine a sentence that is

appropriate and reasonable for the individual defendant.  *Nelson*, 555 U.S. at 351; *see also In re Sealed Case*, 527 F.3d 188, 191 (D.C. Cir. 2008).   These factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.   As explained below, consideration of these factors suggests that a Guidelines sentence is appropriate in this case.

### A.       The Nature, Circumstances, and Seriousness of the Defendant's Offense

The defendant's criminal conduct is undoubtedly egregious.  The defendant targeted the most vulnerable members of our society – children.  He did so relentlessly over the Internet, and when entrusted with caring for them, he abused that trust. He targeted victims in vulnerable states: those who feared repercussions from their peers and family if the defendant exposed or published their images or conversations, and those who might have been questioning their sexuality.

The law recognizes the severity of the sexual coercion and exploitation of children. Congress has prescribed stiff mandatory minimum sentences for offenders who engage in the type of conduct for which the defendant stands convicted. There is a compelling interest in protecting children from this type of exploitation because children who are sexually abused often suffer serious physical and mental health issues.  Studies suggest that early trauma, including sexual abuse, may interfere with brain development and can produce various neuropsychiatric symptoms commonly associated with drug use. *See, e.g.*, Carl M. Anderson et. al, *Abnormal T2 relaxation time in the cerebellar vermis of adults sexually abused in childhood: Potential role of the vermis in stress-enhanced risk for drug abuse*, Psychoneuroendocrinology 27, 231-44 (2002); V.L.

10

Baynard et. al, *The long-term mental health consequences of child sexual abuse: An exploratory study of the impact of multiple traumas in a sample of women*, J. Traumatic Stress 14, 697-715 (2001) (noting that child sexual abuse victims reported a lifetime history of more exposure to various traumas and higher levels of mental health symptoms). Other studies have found that individuals who suffer sexual abuse in their childhood years have a higher rate of anxiety, disruptive behaviors, substance abuse, and personality disorders compared to others who may have experienced other forms of abuse or neglect. *See, e.g.*, P. Cohen et. al, *Child abuse and neglect and the development of mental disorders in the general population*, Development & Psychopathology 13, 981-999 (2001); Shanta R. Dube et. al, *Childhood abuse, household dysfunction, and the risk of attempted suicide throughout the life span: Findings from the adverse childhood experiences study,* JAMA 286(24), 3089-3096 (2001) (noting that a powerful relationship exists between adverse childhood experiences and risk of attempted suicide through the life span); L.L. Merrill et. al, *Predicting the impact of child sexual abuse on women: The role of abuse severity, parental support, and coping strategies*, J. of Consulting & Clinical Psych., 69(6), 992-1006 (2001) (child sexual abuse is a significant predictor of long-term psychological difficulties ranging from depression and anxiety to sexual problems and dissociative symptomatology). Research also indicates that sexually abused adolescents are at an increased arrest rate for sex crimes and prostitution, and are at an increased risk for earlier pregnancy. *See, e.g.*, Frank W. Putnam, *Ten-year research update review: Child sexual abuse*, J. Am. Acad. Child & Adolescent Psychiatry 42 (2003).

The consequences that children and adolescents suffer as a result of being sexually abused and exploited by adults are devastating and often lifelong. Here, the Court is faced with a defendant who preyed on young children to satisfy his sexual urges and desires. To a nine-year-old

victim, he wrote, "you cute to me sexy I like you."  PSR ¶ 26.  He urged and coerced the children to create sexually explicit conduct, and he sent them sexually explicit materials throughout his grooming process.

But this was not merely an online crime.  The defendant acted out his impulses in real life. He preyed on an even younger victim—a victim in his care, when she was between the ages of four and six years old.  He touched her vagina when she was awake and took pictures of her buttocks surreptitiously when she was asleep. This was more than a mere crime of opportunity. This defendant has demonstrated that he has a sexual interest and attraction to very young girls, and that he is willing to act on such desires. The nature, circumstances, and egregiousness of this defendant's ongoing criminal offenses warrant a sentence of 360 months' imprisonment, to be followed by 15 years supervised release.

## B.  The History and Characteristics of the Defendant

As the Court is aware, this is not the defendant's first contact with the criminal justice system.  His convictions began at age 21.  *See* PSR ¶¶ 82-83.  He has committed crimes involving destruction of property, burglary, and assault.  PSR ¶¶ 85, 87.  He has been arrested more than once for domestic violence offenses.  *See* PSR ¶¶ 84, 85 (noting that when law enforcement responded to a residence in reference to an assault, officers found a broken front door lock, and the victim stated to officers that she was afraid of the defendant).  He was convicted for driving under the influence when he was 22 and again three years later, as well as for possession of an open container of alcohol.  *See* PSR ¶¶ 84, 88-89.

Over and over, the defendant has been unable to abide by his conditions of release. *See* PSR ¶¶ 83-87. More than once, he has been unable to successfully complete alcohol treatment,

resulting in revocation of his probation.    PSR ¶¶ 85-86, 119 (removed from Blair House for trying to bring in alcohol and testing positive).

While the government acknowledges this offender's apparent struggle with substance abuse and mental health disorders, the defendant stands before this Court having certain advantages that others do not.  For example, the defendant reported a good relationship with his mother and a relatively stable upbringing.  The defendant had the care and guidance of his uncles and his maternal grandfather, who were positive males role models for him. PSR ¶ 116.  Despite these positive influences, the defendant made the choice to repeatedly abuse and exploit children.

Moreover, the defendant has refused to seek help thus far for his mental health and alcohol abuse disorders.  In 2013, he was discharged from substance abuse treatment because he "did not get anything out of the treatment." PSR ¶ 132. *See also* PSR ¶ 127 (non-compliance with medication); *id.* ¶ 126 (admitting to anger management problem but stating he is "able to manage [it] without medication or therapy").  In the ten years since, his attitude has remained the same. Currently, the defendant is not interested in mental health treatment offered at the DC Jail and, during his presentence interview, stated he was "not ready at the moment to give [alcohol] up." PSR ¶¶ 128, 133.[1]

The defendant's refusal to acknowledge the depth of his problems mirrors his unwillingness to accept full responsibility for his conduct in this case, specifically his hands-on abuse of MV-15.    During her forensic interview, MV-15 credibly disclosed that the defendant

---

[1] After this interview, the defendant apparently reconsidered his position and would now like to take part in Alcoholics Anonymous and other programs that would help him overcome his alcoholism.  PSR ¶ 133. However, if past conduct is any indication, the defendant is not a good candidate for the treatment he now claims to want, and this Court may rightfully be concerned about the defendant's willingness and ability to abide by conditions imposed by this Court during the term of his supervised release.

touched her vagina multiple times under her clothing. She recalled the defendant telling her to remove her underwear on multiple occasions. MV-15 said she told the defendant to stop touching her private parts, but he did not. Despite having pled guilty to Second Degree Child Sexual Abuse, with Aggravating Circumstances, the defendant continues to deny these allegations. *See* PSR ¶ 31. This offender remains unwilling to acknowledge his offense conduct or accept responsibility for his criminal behavior. And given his unwillingness to avail himself of treatment, it is even more likely that he will reoffend upon his release. For all these reasons, a sentence of 30 years is appropriate.

## C. The Need for the Sentence Imposed to Afford Adequate Deterrence, to Avoid Unwarranted Sentencing Disparities, and to Protect the Public from Further Crimes of the Defendant

A sentence of 360 months, which is in the Guidelines range, is sufficient but not greater than necessary to deter the defendant and others from engaging in this conduct in the future. Congress, the Supreme Court, and the Sentencing Commission have indicated that general deterrence is an important factor when considering an appropriate sentence. *See United States v. Fry*, 851 F.3d 1329, 1332 (D.C. Cir. 2017) (approving a sentence that would deter the defendant and "others who may be inclined in doing similar kinds of things"); *see also United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007) ("Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a), it made deterrence a statutory sentencing factor."). When fashioning an appropriate sentence, courts should consider that sex offenders have a high rate of recidivism. *See, e.g.*, *Lombard v. United States*, 44 F. Supp. 3d 14, 26 (D.D.C. 2014) (noting that the court's concerns about recidivism are supported by substantial authority); *see also Smith v. Doe*, 538 U.S. 84, 103 (2003) ("The risk of recidivism posed by sex offenders is

14

frightening and high."); *McKune v. Lile,* 536 U.S. 24, 33 (2002) (noting that "[w]hen convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault"); *United States v. Irey,* 612 F.3d 1160, 1214 (11th Cir. 2010) ("[T]he threat of recidivism by a pedophile who has sexually abused a child is appalling.") (citation and quotation marks omitted); *United States v. Allison,* 447 F.3d 402, 405–06 (5th Cir. 2006) ("Congress explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders."). A 30-year sentence for this offender, who victimized and exploited at least 15 children, demonstrates that federal courts take the protection of children seriously and that offenders will be held to account for the long-term damage that they cause to their vulnerable victims.

Such a sentence would also "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). As long as the sentencing court "correctly calculate[s] and carefully review[s] the Guidelines range, [it] necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities" because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall*, 552 U.S. at 54. The defendant's offense conduct combined with his lengthy criminal history results in a Guidelines imprisonment range of 360 months to life. According to the Judiciary Sentencing Information, the average length of imprisonment for defendants with the same guideline, offense level, and criminal history category as this defendant was 327 months, with the median length of imprisonment of 360 months. PSR ¶ 193. Courts across the country have imposed even lengthier sentences for defendants similarly situated to this defendant. *See*, *e.g*., *United States v. Christopher Gunn*, 2:12-cr-00064 (M.D. Al. 2013) (sentenced to 35 years, the highest allowable under the plea deal, where

defendant used fake names to get victims to chat and then extorted them with pictures or conversation screenshots); *United States v. Tony Browne*, 3:13-cr-00037 (D. VI. 2013) (sentenced to 31 years with CHC I and Offense Level 41 after finding minor females via Facebook, persuading them to take and send pornographic images, extorting them for more images and attempting to get them to have sex, and sending explicit images of himself to the minors); *United States v. Joshua P. Breckel*, 3:19-cr-30046 (S.D. Ill. 2019) (stipulated 35-year sentence where defendant had extorted dozens of minor females into sending sexually explicit images and videos of themselves). As such, a Guidelines sentence in this case would not result in unwarranted sentencing disparities.

Moreover, a sentence in line with the government's and probation's recommendation of 360 months is warranted given that this defendant has been assessed as an "above average" risk to reoffend and commit future sexual offenses. *See* Psychosexual Evaluation and Risk Assessment ("Evaluation"); *see generally* PSR ¶ 129. In reaching her conclusion, Dr. Katherine Robinson identified the two broad sets of risk factors associated with sexual-offense recidivism: (1) an impulsive, antisocial lifestyle, and (2) a history of sexual deviance. *See* Evaluation, at 13. With respect to the first factor, as Dr. Robinson acknowledged, it seems clear that the defendant has demonstrated "antisocial personality, antisocial behavior, and lifestyle instability." Evaluation, at 13. Specifically, Dr. Robinson noted that, in addition to the defendant's excessive use of alcohol and criminal history,

> He demonstrates lifestyle instability in the sense that he has moved about from place to place, typically living with romantic partners. He has not worked since 2009 or 2010 and has supported himself by what he called, "street hustles," such as selling individual cigarettes at Metro stations. [The defendant] does not appear to have any friends and his relationships with his family members are somewhat distant. [The defendant] appears to lack regard for the rights and autonomy of others.

*Id.*

According to Dr. Robinson, the defendant does not demonstrate the second risk factor, "sexual deviance." The basis for this assertion is that "[d]eviant interests usually refer to a pattern of documented, demonstrated interest in sexual behaviors that are illegal and lack consent." Evaluation, at 13. Dr. Robinson's claim that this offender does not demonstrate the risk factor of sexual deviance is contradicted by the facts and evidence in this case.  As an initial matter, the Statement of Offense itself—which the defendant has sworn is accurate—reflects the defendant's persistent sexual exploitation and abuse of children.  He sexually pursued 15 identified minors. And he told other minor victims (*i.e.*, those not included in the Statement of Offense) that he wanted to "teach [them] something about freak life" and he wanted them to be his "freaky lil girl[s]."

Furthermore, the defendant admitted to being sexually aroused by girls in the 12 to 13-year-old age range when chatting online.  That in and of itself is a documented interest in illegal and inappropriate sexual behavior.[2]  The defendant's claim that he would never be aroused by a 12 or 13-year-old in "real life" because they are "annoying" is absurd.  Evaluation, at 8.  This is an offender who repeatedly sought to meet up with these minor girls in person. He told MV-2, a DC resident: "Yea I'm forreal cause I meet you one day and eat your pussy"; "What you be scared to meet up and you let me eat your pussy"; "Maybe next week would you"; "When you let me eat that pussy': "Will you meet me"; "O ite so look trying meet me Wednesday"; "what part dc you from"; "You going let me fuck right"; "You meeting me tomorrow"; "where you want meet me at"; "Well that's where we going you got go to Anacostia station [ . . . ] For I can fuck that pussy[.]"

---

[2] The defendant also reported being aroused by "attractive teenage girls," but Dr. Robinson did not clarify what was meant by "teenage."  Evaluation, at 8.

He was equally persistent with minors who lived outside of DC. He told MV-5, a Kansas resident who was traveling to DC the following summer, "Yea wish I could see when you come dc" because he was "going to want to taste your pussy."  Apparently forgetting MV-5 was not a DC resident, the defendant later invited her over: "You want come over to my place" and "O ite you can come over tomorrow [. . .] I stay up NE Benning road area." Upon re-learning she lived out of state, he lamented, "O damn I wanted you on this dick to."

The defendant was clearly aroused in "real life" by the minors he enticed. He made that apparent by repeatedly sending pictures of his erect penis and videos of himself masturbating to the little girls he was targeting, exploiting, and threatening online.  He told a nine-year-old she was "sexy."  He told a twelve-year-old, "Lol I'm not going even play no games you sexy as fuck and my dick hard."  And, after persuading MV-10 to produce child pornography, the defendant offered, "I suck your dick lick your balls suckyour dick some more get your dick wet and let you nut whereveryou want."

Furthermore, this is an offender who engaged in sexual behaviors that lack consent. *See* Evaluation, at 13 ("Deviant interests usually refer to . . . sexual behaviors that . . . lack consent, most often sex with prepubescent children or rape.").  The defendant molested a five-year-old, when she was both sleeping and awake. When she told him to stop, he did not.  Additionally, none of the minor victims he targeted online are legally capable of consent.

In the face of such pervasive criminal conduct, Dr. Robinson nonetheless failed to recognize "a pattern of documented, demonstrated interest in sexual behaviors that are illegal." *See* Evaluation, at 13.  She concluded that the defendant's youngest victims were merely "victims of opportunity." *See* Evaluation, at 16 ("[I]t seems most likely that these children were victims of opportunity[.]").  The defendant's sexual abuse of a five-year-old, and his sexually explicit chats

with children as young as nine years old, were more than crimes of "opportunity." This offender engaged in a pattern of behavior towards children specifically to satisfy his sexually deviant urges. Thus, contrary to Dr. Robinson's conclusions, the defendant should be considered sexually deviant.

This defendant plainly demonstrates both risk factors for reoffending. He also, as Dr. Robinson correctly noted, possesses none of the protective factors that would tend to mitigate his risk for reoffending. Evaluation, at 13. As such, there is no doubt that the defendant poses a high risk to reoffend. The 360-month sentence recommended by the government is therefore necessary to protect the public from future crimes that this defendant seems all too willing to commit against children.

## V.    The Victims are Entitled to Restitution

Restitution is mandatory for offenses involving the Coercion and Enticement of a Minor, in violation of Title 18 U.S.C. § 2422(b).   *See* 18 U.S.C. § 2429(a).  Under the statute, the order of restitution "shall direct the defendant to pay the victim…the full amount of the victim's losses." § 2429(b)(1).   The government has notified the victims of their right to seek restitution from the defendant.   As of the date of this memorandum, the government has not received a restitution request from the victims of the defendant's crime.   Should the government receive any requests within 90 days of sentencing, the government will alert the Court and the defendant and seek restitution on behalf of these victims.  *See* 18 U.S.C. § 3664(d)(5).

## **CONCLUSION**

For the reasons above, the United States submits that a Guidelines sentence of 360 months' imprisonment, followed by a 15-year term of supervised release, is a reasonable sentence in this case and is "sufficient, but not greater than necessary to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).

Respectfully Submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 48102

By:      _____/s/_____
Meredith E. Mayer-Dempsey
N.Y. Attorney #5213202
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
Phone: (202) 252-6916

Rachel L. Rothberg
CA Attorney #331595
Trial Attorney
Child Exploitation and Obscenity Section
U.S. Department of Justice, Criminal Division

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing ("NEF") to counsel of record in this case.

Respectfully submitted,

_____/s/_____

Rachel L. Rothberg
CA Attorney #331595
Trial Attorney
Child Exploitation and Obscenity Section
U.S. Department of Justice, Criminal Division